[No. 10899.  Department Two.  May 1, 1913.]

PROSSER POWER COMPANY, *Respondent*, v. UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant*.[1]

INSURANCE—FIDELITY BOND—SIGNATURE OF PRINCIPAL—WAIVER. An indemnity company insuring the fidelity of an employee waives the requirement that the principal sign the bond where its agent delivered the bond without such signature.

SAME—DELIVERY.  A fidelity bond is sufficiently delivered where the agent of the surety company handed it to the employee whose fidelity was guaranteed with intent to pass it to the custody of the employer.

SAME—APPLICATION—WARRANTY—BREACH—EVIDENCE.  No breach of warranty that an employee's accounts had been examined September 1, 1909, and found correct, is shown by testimony of the insured's president that he would not say that the books were examined on the first of each month.

SAME—CONDITIONS—EXAMINATION OF ACCOUNTS. The requirement of a fidelity bond of a monthly examination of the books of the employee, and a "daily and monthly" accounting for funds handled, is sufficiently complied with where it is shown that the accounts were examined once a month and a daily examination made of the receipts, ledger and banking account, and the employee was required to submit a complete financial statement once each month, and no discrepancies were found.

SAME—CONDITIONS—SETTLEMENT.  A condition in a fidelity bond that any settlement with the principal for any loss shall render the bond null and void is not broken by the acceptance of money applied in settlement of an embezzlement prior to the date of the bond.

[1]Reported in 132 Pac. 48.

SAME. The acceptance of money applied in settlement of an embezzlement prior to the date of an indemnity bond is not a violation of the provision in the bond that if the obligee shall hold concurrent security, the surety shall be liable for only a proportion of the loss.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered June 17, 1912, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on an indemnity bond. Affirmed.

*Happy, Cullen, Lee & Hindman,* for appellant.

*Thomas A. E. Lally,* for respondent.

Morris, J.—Action upon a fidelity bond, indemnifying respondent against loss to the extent of $1,000 by reason of dishonesty of H. E. Garfield, its bookkeeper and cashier. The cause was tried by the court without a jury, and judgment entered sustaining recovery, from which this appeal is taken.

The appellant, having executed a bond, sent it to a Mr. Pratt, its agent at Prosser, for delivery to respondent. Mr. Pratt called up respondent and notified it of the arrival of the bond, and Garfield, who had charge of respondent's banking business, called at the bank where Mr. Pratt was employed, and Pratt delivered the bond to him. Garfield never signed the bond, and the first contention suggested is that liability cannot be enforced against appellant because of the failure of Garfield as principal to sign the bond. This requirement can be waived, and when Pratt, as agent for appellant, delivered the bond without the signature of the principal, his act was in effect a waiver. It also appears that Garfield executed to appellant an agreement whereby he bound himself to reimburse it for any loss it might sustain under the bond. So far, therefore, as enabling appellant to proceed against Garfield in case of being called upon to stand good for his default, his signature to the bond was not neces-

sary, as such liability could be enforced under the agreement obtained from Garfield. These circumstances are ample to overcome the failure of Garfield to sign the bond as principal. *People to Use of Bartlett Co. v. Carroll*, 151 Mich. 233, 115 N. W. 42; *United States Fidelity & Guaranty Co. v. Haggart*, 163 Fed. 801; *General Railway Signal Co. v. Title Guaranty & Surety Co.*, 203 N. Y. 407, 96 N. E. 734; *Proctor Coal Co. v. United States F. & Guaranty Co.*, 124 Fed. 424.

The second contention is that the bond was never delivered. When Pratt, the local agent, handed the bond to Garfield, his purpose and intent was to deliver it to respondent, and in accepting the delivery Garfield was acting for respondent. There can be no doubt when Pratt parted with the custody of the bond he intended to pass it to the custody of the respondent for the purpose for which it had been written. This would constitute delivery. 1 Cooley, Brief on Insurance, 449.

The third contention is that there was a breach of warranty sufficient to avoid the bond. The application for the bond stated that Garfield's accounts had been examined September 1, 1909, and found correct. The president of respondent testified, in response to questions as to the date of the monthly examinations of Garfield's books, that he could not say the books were examined on the first of each month. This does not prove the falsity of the statement that the books were examined September 1st. The witness was not referring to that particular date, but was referring to the subsequent monthly examinations, when he said he could not testify to such examinations being made on the first of each month. The requirement was a "monthly" examination of the books, and a "daily and monthly" accounting for the funds and securities handled. It is shown, that the respondent examined the accounts once a month and made daily examination of the receipts, ledger, and banking account; that Garfield was required to submit a complete statement of the

financial situation once each month, and that no discrepancies were ever found in any of these examinations. This was a sufficient compliance with the examination requirement. *Southern Surety Co. v. Tyler & Simpson Co.*, 30 Okl. 116, 120 Pac. 936; *American Bonding Co. v. Morrow*, 80 Ark. 49, 96 S. W. 613, 117 Am. St. 72.

It is next suggested that no recovery can be had upon the bond because of an alleged settlement between respondent and Garfield. The bond contained a provision that:

"If the obligee makes any settlement with the principal for any loss hereunder, this bond shall be null and void."

The total amount embezzled by Garfield was $2,468.44. Of this amount $897.43 was embezzled prior to February 1, 1910, the date of the bond, and $1,571.01 subsequent to that time. When respondent learned of this shortage in July, 1910, it demanded security from Garfield, and Garfield executed an agreement, and as part thereof placed the deed to certain lands in escrow. This deed the lower court finds was to be delivered to respondent if Garfield should fail, after three days' notice, to repay it any amount embezzled by him prior to the execution of the bond and not covered by it. It is also found that Garfield represented the land embraced in this deed to be subject to the lien of but one mortgage of $925, when, as a matter of fact, there was a second mortgage of $1,625, which with the first mortgage aggregated an amount exceeding the value of the land. Upon learning these facts, the respondent repudiated the agreement and refused to accept the deed. Garfield also gave respondent a note for $300, which was applied in settlement of the amount embezzled prior to the date of the bond. These facts do not sustain appellant's contention. We know of no legal reason preventing respondent from accepting money from Garfield and applying it in payment of the amount embezzled by him prior to the time when the bond was executed. Such a course did not disturb appellant's liability for sums embez-

zled subsequent to the execution of the bond. This contract was one of indemnity against the dishonesty of Garfield after February 1, 1910, and it had no concern with any settlement between respondent and Garfield for defalcations prior to that time, so long as such settlement was not accepted with any intent to condone the dishonesty of Garfield subsequent to the execution of the bond. *Remington v. Fidelity & Deposit Co.*, 27 Wash. 429, 67 Pac. 989. Neither was the taking of this note a violation of the further provision of the bond that "if the obligee shall at any time hold concurrent with this bond . . . any guaranty of security from or on behalf of the principal, the obligee shall be entitled, in the event of loss by default of the principal, to claim hereunder only such proportion of the loss as the amount covered by this bond bears to the full amount of the security carried whether valid or not."

We find no reason for disturbing this judgment, and it is affirmed.

CROW, C. J., ELLIS, FULLERTON, and MAIN, JJ., concur.